IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-02075-DDD-SKC

DANIEL DECLEMENTS and SAM TULI
Individually and on behalf of all others similarly situated,

    Plaintiffs,
vs.

RE/MAX, LLC, a Delaware limited liability company,

    Defendant.
_____

**MOTION TO DISMISS**
_____

**COMES NOW** Defendant RE/MAX, LLC ("RMLLC"), which moves to dismiss all claims for relief set forth in Plaintiffs' First Amended Complaint (Doc. 17) ("FAC") pursuant to Fed. R. Civ. P. 12(b)(1) for failure to adequately allege standing on a theory of vicarious liability against RMLLC, as well as pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**Certification of Conferral**

RMLLC certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(A) and this Court's Practice Standard III(D)(1), counsel discussed the grounds for this Motion and the relief requested herein. Plaintiffs oppose and declined to further amend their FAC in light of this Motion.

**INTRODUCTION**

Plaintiffs DeClements and Tuli assert putative nationwide claims under the Telephone Consumer Protection Act ("TCPA") against RMLLC, a Colorado-based franchisor of worldwide RE/MAX® franchises. Plaintiffs, who complain of a handful of calls, are hoping to certify a

massive nationwide class action against RMLLC by asserting it is liable for $500/$1500 per call under the TCPA for calls placed by any RE/MAX-brand real estate agent in the United States.

Plaintiffs do not allege that RMLLC itself called them. Thus, the FAC depends on a theory that franchisor RMLLC is vicariously liable for marketing calls placed by individual real estate agents affiliated with independently owned and operated RE/MAX franchisees. However, Plaintiffs' conclusory allegations fail to adequately allege a vicarious liability theory with an injury fairly traceable to RMLLC. Consequently, on its face, the FAC fails to establish Plaintiffs' Article III standing to sue RMLLC. *See Simon v. E. Kentucky Welfare Rights Org.,* 426 U.S. 26, 27 (1976) ("The Art. III 'case or controversy' limitation requires that a federal court act only to redress injury **that fairly can be traced to the challenged action of a defendant, and not solely to some third party**.") (emphasis added). The FAC thus should be dismissed under Rule 12(b)(1). Additionally, because Plaintiffs' vicarious liability claims have not risen above a speculative level, as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the FAC should be dismissed pursuant to Rule 12(b)(6). *See* Argument Part I.

Moreover, even if vicarious liability had been sufficiently alleged, the FAC fails to allege sufficient facts making plausible the alleged TCPA violations, and for this reason too should be dismissed pursuant to Rule 12(b)(6). *See* Argument Part II.

## STANDARD OF REVIEW

To show Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). A Rule 12(b)(1) facial attack on the complaint's allegations questions the sufficiency of the

complaint. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995); *Cunningham v. Univ. of New Mexico Bd. of Regents*, 531 F. App'x 909, 914 (10th Cir. 2013) (facial attack addresses facts found within four corners of complaint). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002. However, in considering a 12(b)(1) facial attack, the court "need not accept [a complaint's] unsupported conclusory allegations." *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010).

Under Rule 12(b)(6), a complaint "must be dismissed if it does not plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While the Court must accept well-pleaded allegations in the FAC as true. , "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1215 (D. Colo. 2012) (Plaintiffs "must do more than articulate a set of facts that could 'conceivabl[y]' or 'possibly' give rise to a claim; he must 'nudge[] his claims across the line from conceivable to plausible.'") (citations omitted).

## FACTS

Defendant RMLLC, a Colorado-based worldwide franchisor of the RE/MAX® brand, owns the right to the RE/MAX® brand and sells franchises and franchising rights.[1]  As of December 2019, the RE/MAX® brand had over 8,000 franchisee offices in more than 110

---

[1] *See* RE/MAX Holdings, Inc. 10-K Annual Report for 2019, at pp. 4-15, located at: https://s2.q4cdn.com/001766218/files/doc_financials/2019/ar/REMAX-2019-Annual-Report.pdf. The Court is permitted to take judicial notice of the public record. *Van Woudenberg v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds*, *McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir. 2001).

countries and territories, with over 130,000 real estate agents operating out of those offices.  *Id.* RMLLC is a 100% franchised business, with all of the RE/MAX® branded brokerage office locations owned and operated by franchisees.[2]

Plaintiff DeClements (an Arizona resident) alleges that on September 2, 2019, he received one "prerecorded voicemail" from a Monique Walker **of RE/MAX Excalibur** (*id.*, ¶¶24-26), and two "autodialed" calls on September 3, 2019 from Michael Kent, **a "Re/Max Infinity agent"** *Id.*, ¶¶29-30.  He claims all three calls violated Section 227(b).

Plaintiff Tuli (a Texas resident) alleges that between July 17, 2018 and July 24, 2018, he received six calls each at two telephone numbers.  *Id.*, ¶13.  He asserts the calls were placed by real estate agents associated with three different RE/MAX-branded companies:  five calls from Mike Rekart of **RE/MAX Legacy**, two calls from Melissa Bui of **RE/MAX Dallas Suburbs**, and five calls from an unknown agent of **RE/MAX Advantage**.  *Id.*, ¶¶13-14, 17, and 19.  Tuli alleges these calls were autodialed without his prior consent in violation of Section 227(b) of the TCPA, and were placed to numbers on the National Do Not Call List in violation of Section 227(c).  Like DeClements, Tuli does not allege that RMLLC called him.

Both Plaintiffs allege that "Re/Max is a national real estate brokerage" that "provides its real estate agents training and technology to use to market their real estate brokerage services for their mutual benefit" (*id.*, ¶6); that there is a "new trend" of real estate agents cold-calling certain property owners (*id.*, ¶7); and that "Defendant Re/Max is aware of this marketing trend and

---

[2] Such basic information about RMLLC's business was available to Plaintiffs not only in public filings, but also in the sworn declaration offered in support of RMLLC's challenge to personal jurisdiction in Arizona.  *See* Doc. 11-1.  But even if the Court takes as true Plaintiffs' incorrect assertion that RMLLC is a "real estate brokerage" (Doc. 17, ¶6), that allegation has no impact on Plaintiffs' failure to allege sufficient facts to assert vicarious liability claims against RMLLC.

directs, authorizes, or at a minimum, ratifies real estate agents' misconduct in a number of ways" including by allegedly endorsing/promoting Landvoice and Tom Ferry. *Id.,* ¶8. Plaintiffs do not assert, however, that the calls they received were made using Landvoice and/or implementing Ferry's techniques and training. The remainder of Plaintiffs' factual allegations are unverified, undated, and anonymous Internet postings from consumers who apparently received similar calls. *Id.*, ¶¶16, 20, 28, 32.

## ARGUMENT

### I. Plaintiffs Do Not Allege Sufficient Facts As To RMLLC's Vicarious Liability And The FAC Should Be Dismissed Pursuant To Rules 12(b)(1) And 12(b)(6)

#### A. Standards For TCPA Vicarious Liability Claims

There are two theories of TCPA liability: "the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Group, Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan 4, 2018). Federal courts are clear that TCPA complaints based on vicarious liability, like Plaintiffs' here, should be dismissed when the facts alleged do not make likely a principal-agent relationship between defendant and the caller. *See, e.g.*, *Warciak v. Subway Rests., Inc*., 949 F.3d 354, 357 (7th Cir. 2020) (affirming dismissal when complaint "failed to include enough facts to state a plausible claim for relief under the legal theory of vicarious liability"); *Friedman v. Massage Envy Franchising, LLC*, 2013 WL 3026641, at *3-4 (S.D. Cal. Jun 13, 2013) (dismissing TCPA claims brought against franchisor because complaint was devoid of factual allegations sufficient to establish likelihood of principal-agency relationship between defendant and caller); *Abante*, 2018 WL 288055, at *5 (dismissing TCPA complaint against Farmer's Insurance for calls by insurance agents as "devoid of factual allegations from which the court could infer defendant

5

controlled or could control" the callers); *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *3 (N.D. Cal. Oct. 16, 2019) (dismissing complaint for failure to "sufficiently allege the existence of an agency relationship between Agentra and/or DPG on the one hand and Doe, the purported caller, on the other"). *See also Clemons v. State Farm Mut. Auto. Ins. Co*., 2020 WL 4193997, at *6 (C.D. Ill. July 21, 2020) (dismissing under 12(b)(1) TCPA complaint asserting State Farm was vicariously liable for insurance agent calls where plaintiffs did not "adequately allege standing on an apparent authority theory").

In short, proceeding in federal court with a TCPA claim requires more than the speculation, legal conclusions, and conclusory allegations offered by Plaintiffs. A TCPA vicarious liability complaint that fails to establish sufficient facts **on its face** to support the viability of that theory should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

### B. The FAC Does Not Allege Facts Sufficient To Support A Plausible Vicarious Liability Claim Against RMLLC

There are three agency relationships that can support a vicarious liability claim under the TCPA: (1) actual authority, (2) apparent authority, and (3) ratification. *See, e.g.*, *In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6584 (2013)*; Kristensen v. Credit Payment Servs, Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (same); *see also United States v. Lilly*, 810 F.3d 1205, 1211 (10th Cir. 2016) (a principal may convey actual authority or apparent authority, and may retroactively authorize actions through ratification). Thus, to state a viable claim and have Article III standing to proceed, Plaintiffs would need to sufficiently allege facts to support at least one theory of vicarious liability. They fail to do so.

#### 1. The FAC Does Not Plausibly Allege Actual Authority.

To state a plausible TCPA claim for actual authority, a "plaintiff must allege facts

showing that [the principal entity] had the right to control [the agent entity] and the manner and means of the calls." *Naiman v. TranzVia LLC,* 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017) (citations omitted) (dismissing TCPA complaint where plaintiff had "not pled a single fact demonstrating that [Defendant] actually had control over Rose such that it can be held vicariously liable for any of Rose's purported violations of the TCPA."). Here, Plaintiffs do not allege any facts to show that RMLLC controlled the callers. Instead, the FAC alleges that the real estate agents calling Plaintiffs were either affiliated with, or employed by, or agents for, companies other than RMLLC. *See* Doc. 17, ¶¶14, 17, 20, 26, 30.

The FAC itself thus makes clear that the real estate agent callers were employed by, or affiliated with, independently owned and operated businesses that are **not RMLLC**. And "[w]ithout any allegation demonstrating Defendant's control over the alleged telemarketers as to the calls at issue, it cannot be inferred such telemarketers possessed a reasonable belief they were acting pursuant to Defendant's direction and control." *Clemons*, 2020 WL 4193997, at *4 (dismissing pursuant to 12(b)(1)). *See also Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *8 (N.D. Cal. Mar. 20, 2019) (dismissing pursuant to 12(b)(6) after finding that allegations of "encouraging" or "allowing" sales calls were "too general and conclusory," and that conclusory allegations that defendant controlled "manner and means" of a call were insufficient "to support a plausible inference that Youngevity controlled the specific person or entity that allegedly made the March 15 call"); *Pascal,* 2019 WL 5212961, at *3 (conclusory allegations of defendant knowingly accepting business originating from calls insufficient to support theory of actual authority).

### 2. The FAC Does Not Plausibly Allege Apparent Authority.

"To state a plausible claim under an apparent authority theory, a plaintiff must allege facts showing that [the principal entity] did or said something sufficient to create a reasonable belief that [the agent entity] had authority to act on behalf of [it]." *Naiman*, 2017 WL 5992123, at *6 (citations omitted). Apparent authority claims depend on alleging one relied on statements by the principal. *Id.* ("Apparent authority cannot be shown by allegations that the alleged agent 'claimed authority or purported to exercise it.'"). *See also Thomas v. Taco Bell Corp.*, 582 Fed. App'x 678, 679–80 (9th Cir. 2014) ("Thomas has not shown that she reasonably relied, much less to her detriment, on any apparent authority with which Taco Bell Corp. allegedly cloaked the Chicago Association."); *Clemons*, 2020 WL 4193997, at *5 ("[T]here must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief.") (quoting Restatement (Third) of Agency § 2.03 (2006)).

Here, there are no allegations that **RMLLC** made any representations **to Plaintiffs** that would create a reasonable belief that the callers acted on behalf of RMLLC. Thus, Plaintiffs have not shown that an apparent authority theory of vicarious liability is plausible. *See Warciak*, 949 F.3d at 357 (affirming 12(b)(6) dismissal of TCPA vicarious liability complaint that "lack[ed] sufficient facts showing Subway manifested to the public that [caller] was its agent"); *see also Clemons*, 2020 WL 4193997, at *4-5 (dismissing under 12(b)(1)). Indeed, the FAC makes clear that even the callers held themselves out as affiliated with other, independent companies that Plaintiffs name in the FAC: RE/MAX Legacy, RE/MAX Dallas Suburbs, RE/MAX Advantage, RE/MAX Excalibur, and RE/MAX Infinity. *See* Doc. 17, ¶¶14, 17, 20, 26, 30.

### 3.     The FAC Does Not Plausibly Allege Ratification.

Finally, a third viable theory of agency is ratification—"the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen*, 879 F.3d at 1014 (quoting Restatement (Third) of Agency § 4.01(1)).  "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it."  *Thomas*, 582 Fed. App'x at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)).

Plaintiffs claim broadly in three short paragraphs of the FAC that RMLLC ratifies realtor misconduct by allegedly endorsing products from Landvoice and Ferry, by providing certain courses on RE/MAX University, and by being aware of a trend of cold-calling and benefitting from real estate agent cold-calls. *See* Doc. 17, ¶¶6-8.  (Plaintiffs do not, however, allege any facts that would make likely that the callers used Landvoice or were coached by Ferry, or that such usage/coaching would only lead to TCPA-violative calls.)  Plaintiffs reference a calling "marketing plan" that they claim RMLLC "established and/or ratified."  *See, e.g.*, *id*., ¶31.

However, the FAC's failure to provide facts showing **affirmation** by RMLLC of the calls Plaintiffs received means that the FAC does not state a viable ratification theory.  *See, e.g.*, *Pascal*, 2019 WL 5212961, at *4.  *See also Rogers v. Postmates, Inc.*, 2020 WL 1032153, at *4 (N.D. Cal. Mar. 3, 2020) (dismissing TCPA complaint and noting that speculation regarding defendant's ratification is not enough to "make it through a challenge to the pleadings" when plaintiff is "armed with nothing more than conclusory allegations and speculation").

Thus, the FAC should be dismissed under Rules 12(b)(1) and/or 12(b)(6).

9

## II. Even Had Vicarious Liability Been Sufficiently Pled, The FAC Fails To Assert A Viable Claim Under The TCPA.

As a separate basis for Rule 12(b)(6) dismissal, Plaintiffs' FAC fails to allege sufficient facts to make TCPA violations likely. *Rallo v. Palmer Admin. Srvc's*, 2019 WL 1468411, at *3 (D. Colo. Apr. 3, 2019) confirmed that TCPA claims are not subject to a lesser pleading standard than that established in *Iqbal* and *Twombly*. Thus, adequate allegations of characteristics of use of TCPA-restricted equipment (ATDS/prerecorded) or Do Not Call violations must be alleged.

### A. The FAC Fails To Allege Facts Sufficient To Support Causes of Action Asserted Under Section 227(b).

To satisfy the elements of a Section 227(b) claim, Plaintiffs must allege: (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express consent of the recipient. *See Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982 (N.D. Ill. 2013) (citing 47 U.S.C. § 227(b)(1)(A)(iii)); *see also Rallo*, 2019 WL 1468411 at *2. It is the **second** element—that the caller used an ATDS or artificial/prerecorded voice—that the FAC fails to make plausible.

#### 1. Plaintiff DeClements' allegations of a "prerecorded call" are insufficient

Plaintiffs' first cause of action is based on a single "prerecorded call" purportedly received by Plaintiff DeClements. *See* Doc. 17, ¶¶24-25, 43-47. DeClements claims that Monique Walker of Re/Max Excalibur left him the following voicemail: "Hello, this is Monique at 602-413-8195. I had a couple of questions regarding your home and wanted to . . ." with the voicemail then cutting out. *Id.*, ¶24. DeClements' sole basis for asserting this call was prerecorded is that he "believes the voicemail was prerecorded due to its generic nature and the

10

fact that it cuts off prematurely before the full message plays." *Id.*, ¶25.  However, such a "belief" fails entirely to allege facts making it more likely than not the use of a prerecorded message by Ms. Walker in the voicemail she left.

This is not a situation in which Plaintiff provided factual allegations sufficient to make use of prerecorded messaging likely, such as that a message asked the recipient to "press 1 to speak to a live operator," or was identical to other messages.  *See, e.g.*, *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1003-04 (N.D. Ill. 2014) (denying motion to dismiss when five voicemails included verbatim language, and two stated "press 1 to speak to a live operator");  *Cunningham v. Forrester Fin. Servs.*, 300 F. Supp. 3d 1004, 1017 (N.D. Ind. 2018) (messages instructed recipient to "press 1" to speak with live person); *Cannioto v. Simon's Agency, Inc.*, 2020 WL 2808983, at *3-4 (W.D.N.Y. May 29, 2020) (message asked plaintiff to press specific numbers to indicate he was "Susan Wolke").  Ms. Walker's alleged message has no such indication of being prerecorded.

### 2. Plaintiffs' allegations of use of an "ATDS" are insufficient

Both Plaintiffs assert illegal use of an "ATDS" in their second cause of action under Section 227(b).  But the FAC fails under even the broadest interpretation of "ATDS" to allege use of an autodialer defined by the TCPA:  "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers."  47 U.S.C. § 227(a)(1).

DeClements claims that Michael Kent of RE/MAX Infinity placed two "autodialed" calls:  a call that disconnected, "indicating the use of an autodialer," and then a call-back, with "a pause" before introducing himself.  Doc. 17, ¶29.  Tuli complains of six calls each to his Google

Voice number and his cellular number, and claims that "[o]n information and belief, many of the calls Tuli received were made by an autodialer since multiple Re/Max agencies called him, he received a high volume of calls, and Re/Max endorses autodialer use." *Id.*, ¶22. These factual allegations do not identify which calls Tuli believes were "autodialed," and do not make it more likely than not that the few calls were placed with an ATDS restricted by the TCPA, rather than being manually dialed. *See, e.g.*, *Hampton v. Barclays Bank Delaware,* 2019 WL 4256371, at *6 (D. Kan. Sept. 9, 2019) ("alleged facts fail to explain the circumstances surrounding the calls sufficient to support a plausible inference that defendant called plaintiff's cellular telephone using an ATDS").

First, Plaintiff Tuli admits that six calls at issue were placed to a Google Voice number (Doc. 17, ¶13) that he **forwarded** to his cellular phone. *Id.*, ¶10. Calls **forwarded** to a cellular phone do not violate Section 227(b)'s restrictions on calls to cell phones. *See, e.g., Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 582 n.9 (E.D. Pa. 2017) (finding for defendant on Section 227(b) liability for calls to Google Voice number; "[W]here a person sets up the forwarding of calls made to a number assigned to one service to then forward to a number assigned to another service it is the person setting up the forwarding calls who in essence is making the call to the second service."); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3807 (2005) ("Action on the part of any residential subscriber to forward certain calls from their wireline device to their wireless telephones does not subject telemarketers to liability under the TCPA."). Thus, those six calls cannot be pursued under Section 227(b).

And as to the other six calls placed to Plaintiff Tuli's cellular phone by three different realtors (Doc. 17, ¶13), and the two calls placed to Plaintiff DeClements' cellular phone by Mr. Kent (*id.*, ¶29), there is simply no plausible inference from the FAC's allegations that those few calls were placed with an ATDS. This is not a complaint, as in *Hill v. USAA Savings Bank*, 2019 WL 3082471 (W.D. Okla. Jul. 15, 2019), where six to seven calls a day, for six days a week, were placed by a single caller in a consistent fashion, with over 100 calls systematically terminating when directed to voicemail. *See id.*, at *1 (describing facts deemed sufficient to support presumption of autodialer); *Georgopulous v. PPM Capital, Inc*., 2019 WL 6065617 (D. Colo. Oct. 21, 2019), *adopted* 2019 WL 6053333 (D. Colo. Nov. 15, 2019) (plaintiff's number dialed nine times in five minutes). Given Plaintiffs' allegations, it is just as conceivable that the callers placed calls manually, as with any sort of "autodialer." Thus, use of an ATDS simply is not plausible under *Twombly/Iqbal* standards.

### 3. Plaintiff Tuli's allegations of Do-Not-Call violations are insufficient.

Finally, even if he had sufficiently alleged that RMLLC could be vicariously liable for any violations of Section 227(c) (which he did not), Tuli's allegations under the Do Not Call section of the TCPA fail to state a viable claim. Tuli alleges that his cellular number and Google Voice number are registered on the National Do Not Call list (Doc. 17, ¶9), asserts he uses the numbers "for personal purposes only" (*id.*), and claims that marketing calls to those numbers would be restricted by Section 227(c), which encompasses marketing calls to "a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 U.S.C. § 227(c).

However, a Google Voice number (which does not use telephone lines) is not a "residential telephone number," and Rule 12(b)(6) dismissal of allegations under Section 227(c) is proper when the allegations only involve calls to **cellular** phones.  *See, e.g.*, *Cunningham v. Sunshine Consulting Grp., LLC.*, 2018 WL 3496538 (M.D. Tenn. July 20, 2018) (dismissing 227(c) claims because Do Not Call list protects residential telephone subscribers, not cellular phones); *see also Cunningham v. Politi*, 2019 WL 2517085, at *4-5 (E.D. Tex. April 30, 2019), *adopted* 2019 WL 2524737 (same); *Bates v. I.C. Sys., Inc.*, 2009 WL 3459740, at *1 (W.D.N.Y. Oct. 19, 2009) ("[T]he TCPA differentiates between calls made to cellular and residential lines.").  Plaintiff's statement that he uses his numbers "for personal purposes only" is insufficient to establish that his cellular and Google Voice numbers are "residential lines" protected by Section 227(c).

## CONCLUSION

For the above reasons, RMLLC respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint.  Moreover, given that Plaintiffs already amended once after being instructed by the first-assigned court to do so, and did not agree to amend to avoid this Motion, the FAC should be dismissed with prejudice.

DATED:  July 30, 2020.

                                     *s/Becca J. Wahlquist*
                                     Becca J. Wahlquist
                                     Snell & Wilmer L.L.P.
                                     350 S. Grand Avenue, Suite 3100
                                     Los Angeles, CA  90071-3420
                                     Telephone:  213.929.2500
                                     Facsimile:  213.929.2525
                                     E-mail:  bwahlquist@swlaw.com

        *s/Ellie Lockwood*
        Ellie Lockwood
        Snell & Wilmer L.L.P.
        1200 17th Street, Suite 1900
        Denver, Colorado 80202
        Telephone:  303.634.2000
        Facsimile:   303.634.2020
        E-mail:  elockwood@swlaw.com

        ***Attorneys for Defendant RE/MAX, LLC***

## **CERTIFICATION OF TYPE-VOLUME LIMITATION**

      I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

        *s/      Ellie Lockwood*

## CERTIFICATE OF SERVICE

I certify that on July 30, 2020, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all parties of record.

*s/Sandy Braverman*